22302

SOUTHMARK CORPORATION, Appellant, v. Michael J. MUNGO, Respondent.

(329 S. E. (2d) 760)

Supreme Court

*Kermit S. King,* of *King & Cobb,* Columbia, *for appellant.*

*R. Davis Howser* and *Charles E. Carpenter, Jr.* of *Richardson, Plowden, Grier & Howser*, Columbia, *for respondent.*

Heard March 11, 1985.

Decided April 26, 1985.

LITTLEJOHN, Chief Justice:

The issue in this appeal is whether the defendant-respondent, Michael J. Mungo, is liable as a matter of law to the plaintiff-appellant, Southmark Corporation, for damages allegedly sustained when it unsuccessfully attempted to develop a thirty-four acre tract of land in Lexington County. The issues growing out of a contract were tried by a jury which found in favor of Mungo. We hold that the trial judge erred in failing to grant a directed verdict for plaintiff, Southmark.

In 1971, Fountain, Cecil and Summers, Inc. owned the subject property upon which it planned to develop an apartment complex. This property is now owned by Southmark. Republic Utilities, Inc. was a privately owned public utility company which provided sewer service to various properties in the same general vicinity. This utility company was controlled and/or owned solely by Mungo. On November 9, 1971, Fountain and Republic entered into a contract whereby Republic agreed to provide a maximum of 464 residential customer sewer taps to the Fountain group or their heirs, successors or assigns. Fountain paid Republic a total of $58,000 for 232 of the 464 taps.

In December 1972, Mungo personally entered into an agreement with the City of Columbia whereby he agreed to convey the sewer system to the City by donating all of the stock of Republic Utilities, Inc. The agreement further provided for liquidation of the corporation and that Mungo "... shall also assume all unpaid liabilities of the corporation." It also stated that "... Mungo shall be entitled, at no cost, to the number of taps allowed by the capacity of each lagoon as of January 1, 1973, as set forth on Schedule B attached hereto for a period of seven (7) years after that date. The City will take necessary steps to assure that the capacity of outfall lines will accommodate the total taps to which Mungo is entitled hereby." The City agreed to take over and

operate the system beginning January 1, 1973. Neither Fountain nor any of the subsequent owners of the property including Southmark Corporation, were parties to this contract and are not bound thereby.

Republic Utilities, Inc. was promptly dissolved by Mungo and the City of Columbia in early 1973. Mungo admittedly became Successor to and Statutory Trustee of Republic Utilities, Inc. On April 6, 1973, he individually received $7,500 payment of 30 additional sewer taps. This amount was paid by Scarborough, Sheffield & Gaston, Inc. which had taken title from Fountain. On September 21, 1973, Mungo wrote a letter to the Trustees of Citizens & Southern Realty Investors (which held a mortgage on the property) saying: "I am Successor to Republic Utilities, Inc., a South Carolina corporation which has been dissolved. I have assumed the obligation of Republic Utilities, Inc. ..." pursuant to the November 1971 agreement with Fountain. In the same letter he acknowledged that Fountain had paid Republic a total of $58,000 for sewer taps and were thus entitled to 232 residential sewer taps and acknowledged that $7,500 had been "... paid to me ..." for 30 additional taps.

Mungo does not deny that he had a personal obligation because he was Successor to the corporation to provide the taps for which payment had been made. At trial Mungo testified as follows:

Q: [Lawyer] Well, regardless of what the legal conclusion may be, that the court and the jury will have to reach, tell me whether or not the interlineation and the signature block both identify you as successor?

A: [Mungo] Yes, there's no question, but I meant for them to have these sewer taps up until 1980.

The only argument Mungo can muster as an excuse for failing to comply with the written agreement is that taps had to be acquired within the seven-year period referred to in his contract with the City of Columbia. As pointed out hereinabove, none of the landowners were parties to that agreement. Mungo may not now vary the terms of the written contract by testifying that he did not intend to be bound beyond the seven-year period. His intentions were erroneously admitted into evidence and were of

no consequence. He is not permitted to boot strap himself out of a contract by asserting his intentions. If such were his intentions, they should have been made a part of the agreement. Mungo's testimony was parol evidence and cannot be admitted for the purpose of changing the contract or showing an intention or understanding different from that which is expressed in the written agreement. *Suttles v. Wood,* 280 S. C. 272, 312 S. E. (2d) 574 (S. C. App., 1984).

Nor can Mungo find comfort in verbiage included in ■ an agreement wherein Scarborough, Sheffield & Gaston, Inc. and SSG Equity Corporation on December 28, 1976, assigned to Citizens & Southern Realty Investors 262 residential sewer taps which had been bought and paid for from Mungo's corporation. The agreement stipulated "... it being understood and agreed that the interest and duties of Republic Utilities, Inc. have now by assignments been transferred to the City of Columbia, South Carolina." The language simply does not relieve Mungo of his obligation to supply 262 taps for which he and his corporation have been paid $65,500.

Times within which to demand and supply the sewer ■ taps was not spelled out in the 1971 contract between Fountain and Republic. Mungo argues that his contract with the City supplies the missing element and that the obligation does not extend beyond the seven years referred to in his contract with the City. This argument loses its impact completely because the taps were demanded of both Mungo and the City on November 20, 1979, and December 28, 1979, respectively. Considering the fact that $65,500 had been paid for the taps, the time of the demand was not unreasonable.

All of the instruments were obviously meticulously worded by people skilled in contracts and realty transactions. There is no ambiguity and the trial judge should have interpreted the instruments binding on Mungo. Failure to grant a directed verdict was error. The case is remanded for the sole purpose of having the trial court determine the damages, if any, to which Southmark Corporation is entitled.

Reversed and remanded.

NESS, HARWELL, and CHANDLER, JJ., concur.

GREGORY, A.J., concurs in separate opinion.

GREGORY, Justice (concurring):

I concur; however, the majority failed to reach the question of damages, if any, that are recoverable on remand.

Mungo's liability is determined by the contract. Recovery, if any, is limited to the taps to be installed pursuant to Southmark's timely request. To allow additional recovery would result in Mungo becoming an insurer of Southmark's now-defunct development. This was not contemplated by the contract.